IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

```
                                *
WILLIAM J. STEINER, ET AL.,
                                *
        Plaintiffs,
                                *
v.                                    CIVIL NO.: WDQ-05-1517
                                *
COUNTY COMMISSIONERS OF
CAROLINE COUNTY, ET AL.,        *

        Defendants.             *
```

*    *    *    *    *    *    *    *    *    *    *    *    *

Memorandum Opinion

William J. Steiner and McDoogal's East Inc., ("Steiner"),
has sued the County Commissioners of Caroline County, (the
"Commissioners") under 42 U.S.C. § 1983 for abridgment of their
First and Fourteenth Amendment rights and under Article 40 of the
Maryland Declaration of Rights for violations of their rights of
free speech and expression.[1]  Pending is Steiner's objection to
Magistrate Judge James Bredar's June 28, 2006 order.  For the
following reasons, Steiner's objection will be overruled.

I.   Background

On March 8, 2005, Steiner entered into a contract to
purchase land in Caroline County for the purpose of operating an

---

[1] The Maryland Court of Appeals "has often treated [Article
40] as being *in pari materia* with the First Amendment and has
stated that the legal effect of both provisions is substantially
the same." *Pack Shack, Inc. v. Howard County*, 377 Md. 55, 64 n.3
(2003) (citations omitted).

1

adult-oriented business.  Am. Compl. at ¶ 4, 6.  On April 19,
2005, the Commissioners enacted a six-month moratorium on adult-
oriented businesses (the "Moratorium").  *Id*. at ¶ 3.  Steiner
filed suit on June 6, 2005.  Later, the Commissioners amended the
county zoning ordinance limiting the placement of such businesses
(the "Ordinance").  Magistrate Judge's May 3, 2006 Order at 1
(the "May 3 Order").  The Commissioners were assisted in their
efforts by lawyers of Funk, Bolton, P.A. who served as "county
attorney" or "assistant county attorney."  Magistrate Judge's
June 28, 2006 Order at 1-2 (the "June 28 Order").

Steiner filed a motion to compel production of documents and
the Commissioners responded with a motion for protective order
and to quash subpoenas.  May 3 Order at 1.  In the May 3 Order,
Judge Bredar stated that "the Court will not foreclose the
discovery sought here on grounds of relevance," instead, Judge
Bredar focused on attorney-client privilege and work product
protection.  *Id*. at 2-3.  Judge Bredar held an *in camera* review
of certain documents identified and withheld from discovery by
the Commissioners on assertion of privilege.  June 28 Order at 1.

On June 28, 2006, Judge Bredar granted Steiner's motion and
granted in part and denied in part the Commissioners' motion.
Specifically, Judge Bredar granted the Commissioners' motion with
respect to the billing records of the lawyers for the
Commissioners and denied the motion as to all other issues while

allowing the Commissioners to raise privilege defenses to
individual questions as they arise.

Judge Bredar focused on three Fourth Circuit cases, *U.S. v.
(Under Seal)*, 748 F.2d 871 (4ᵗʰ Cir. 1984); *In re Grand Jury
Proceedings*, 727 F.2d 1352 (4ᵗʰ Cir. 1984); and *U.S. v. Jones*,
696 F.2d 1069 (4ᵗʰ Cir. 1982) and found that "[t]he gravamen of
those cases...is the principle that privilege either does not
apply to communications that are intended to be made public nor
to communications regarding such communications or is waived as
to such communications."  June 28 Order at 2.  Judge Bredar held
that: 1) the Commissioners expected that the product of the
lawyers would be made public; and 2) "expectations of privacy
regarding communications underlying the production of that
product either are unreasonable or are waived."  *Id*.

II.  Analysis

A.   Standard of Review

Under Local Rule 301.5.a, "[a] District Judge may
reconsider, modify, or set aside any portion of the Magistrate
Judge's order found to be clearly erroneous or contrary to law."
*See also* Fed. R. Civ. P. 72(a).  Specifically, the District Court
should review the factual findings of a magistrate judge's
decision for clear error and conclusions of law *de novo*.  *Int'l
Assoc. of Machinists and Aerospace Workers v. Werner-Masuda*, 390

3

F.Supp.2d 479, 485 (D. Md. 2005).

In applying the clearly erroneous standard, a District Court should not determine whether the finding is the best or the only finding possible. *Id*. at 486. The Court should not "substitute its own conclusions for that of the magistrate judge;" instead, the Court should only determine whether the magistrate judge's findings are reasonable. *Id*. Indeed, "[i]t is not the function of objections to discovery rulings to allow wholesale relitigation of issues resolved by the magistrate judge." *Buchanan v. Consol. Stores Corp.*, 206 F.R.D. 123 (D. Md. 2002).

B.   Relevancy

As Judge Bredar noted, relevance requires determining the appropriate level of scrutiny and so is a question of law reviewed *de novo* by this Court. Regulation of speech that is aimed at suppressing the content of the speech is subject to strict scrutiny. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 46 (1986). However, if a regulation's primary purpose is to avoid the adverse secondary effects of speech-related activity, the regulation is "content-neutral," and is measured with intermediate scrutiny. *See id.* at 48-50.

To determine whether the regulation is unrelated to the suppression of free expression the Court must look for the Commissioners' "predominate" intent. *See Renton*, 475 U.S. at 47-48 (eschewing an analysis of individual legislators' motivations

4

while endorsing an analysis of the City Council's predominate intent).  As a result, to the extent discovery is sought to uncover the Commissioners' predominate intent, it is relevant.

C.   Attorney-Client Privilege

The Commissioners argue that Judge Bredar's ruling was incorrect as a matter of law and that the documents sought are in fact protected by attorney-client privilege.  They also argue that Judge Bredar's factual finding regarding intent to publish ignored an affidavit to the contrary.

The purpose of the attorney client privilege "is to encourage full and frank communication between attorneys and their clients." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  This purpose, however, is "inconsistent with the general duty to disclose and impedes the investigation of the truth," so "the privilege must be strictly construed." *United States v. (Under Seal)*, 748 F.2d 871, 875 (4th Cir. 1984) ("*Under Seal*").

"[I]f a client communicates information to his attorney with the understanding that the information will be revealed to others, that information as well as the details underlying the data which was to be published will not enjoy the privilege." *Id.; Jones*, 696 F.2d at 1072.  These details include:

> the communications relating the data, the document, if any, to be published containing the data, all preliminary drafts of the document, and any attorney's notes containing material necessary to the preparation of the document. Copies of other documents, the contents of which were

necessary to the preparation of the published document, will
also lose the privilege.  If any of the non-privileged
documents contain client communications not directly related
to the published data, those communications, if otherwise
privileged, must be removed by the reviewing court before
the document may be produced.

*Id.* at 875 n.7.

The difficulty comes in determining whether a client intends
or assumes that his communication is confidential.  Courts allow
discovery when the client communicates information to the
attorney to incorporate into a product to be published.  *See In
re Grand Jury Proceedings*, 727 F.2d 1352, 1356-57 (discussing
*United States v. Jones*, 696 F.2d 1069 (4th Cir. 1982)).  When, on
the other hand, the client communicates information to receive
advice which ultimately assists the client in publishing, the
underlying communications are still privileged.  *In re Grand Jury
Subpoena*, 341 F.3d 331, 336 (4th Cir. 2003).

"Rather than look to . . . a specific request for
confidentiality, we must look to the services which the attorney
has been employed to provide and determine if those services
would reasonably be expected to entail the publication of the
clients' communications." *Under Seal*, 748 F.2d at 874.

Upon review of the communications at issue, Judge Bredar
found that the lawyers were asked to draft: 1) proposed
ordinances to be published, to be the subjects of public hearings
and to be enacted into law by the county's Board of
Commissioners; 2) notices of public hearings to be published in

6

local newspapers; 3) a statement to be delivered by the chairman
of the Planning Commission to be read into the public record; and
4) a letter to be sent to plaintiff Steiner.  June 28 Order at 2.
While the Commissioners point to the affidavit of Charles Cawley,
the County Administrator for Caroline County, as evidence of the
Commissioners intent for confidentiality, Judge Bredar's holding
based on his review of the documents was not clearly erroneous.

     Since the communications were to be incorporated into
publications, they are discoverable.  The Commissioners, however,
may claim privilege for specific questions or portions of
documents unrelated to the identified publications.

D.   Work Product

     "[I]t is essential that a lawyer work with a certain degree
of privacy, free from unnecessary intrusion by opposing parties
and their counsel."  *Hickman v. Taylor*, 329 U.S. 495, 510 (1947).
In addition, "[n]ot even the most liberal of discovery theories
can justify unwarranted inquiries into the files and mental
impressions of an attorney."  *Id*.  *Hickman* has been codified in
Federal Rule of Civil Procedure 26(b)(3) which addresses
discovery of "documents and tangible things . . . prepared in
anticipation of litigation or for trial."

     Courts have broken work product into two categories, fact
and opinion.  *In re Grand Jury Proceedings*, 33 F.3d 342, 348 (4th
Cir. 1994).  Fact work product can be discovered by showing: 1) a

substantial need; and 2) "an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." *Id*.  On the other hand, courts assert far greater protection over opinion work product, which "represents the actual thoughts and impressions of the attorney and . . . can be claimed by the client or the attorney." *Id*. (citations omitted).

Nothing in the June 28, 2006 order forces discovery of protected work product or prevents it from being claimed with respect to specific discovery requests.

E.   Legislative Immunity

The Commissioners contend that the Court should not allow the depositions of the individual County Commissioners to be taken, arguing that their legislative testimonial privilege acts as a complete bar.  "The existence of testimonial privilege is the prevailing law in this circuit." *Burtnick v. McLean*, 76 F.3d 611, 613 (4th Cir. 1996).  Steiner cannot use the testimony of legislators in a § 1983 case.  *See id*.

III. Conclusion

For the reasons stated above, the Commissioners' objection will be overruled.


October 20, 2006                    _____/s/_____
Date                                William D. Quarles, Jr.
                                    United States District Judge

8