IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                                    *

WILLIAM J. STEINER, ET AL.,
                                    *

     Plaintiffs,
                                    *

v.                                        CIVIL NO.: WDQ-05-1517
                                    *

COUNTY COMMISSIONERS OF
CAROLINE COUNTY,                    *

     Defendant.                     *

*     *     *     *     *     *     *     *     *     *     *     *     *

MEMORANDUM OPINION

     William J. Steiner and McDoogal's East Inc., ("Steiner"),

sued the County Commissioners of Caroline County, (the

"Commissioners") under 42 U.S.C. § 1983 for abridgement of their

rights to free speech and expression as protected by the First

and Fourteenth Amendments and Article 40 of the Maryland

Declaration of Rights.[1]  The suit arises out of Steiner's desire

to open an adult-oriented business[2] ("AOB") and the

Commissioners' passing of a moratorium ordinance[3] (the

"Moratorium") and subsequent zoning ordinance amending the

---

[1] The Maryland Court of Appeals "has often treated [Article 40] as being *in pari materia* with the First Amendment and has stated that the legal effect of both provisions is substantially the same." *Pack Shack, Inc. v. Howard County*, 377 Md. 55, 64 n.3 (2003) (citations omitted).

[2] The Caroline County ordinances at issue set forth definitions of AOBs, which includes, *inter alia*, Steiner's proposed club featuring nude dancing.

[3] Caroline County Ordinance No. 2005-001.

1

County's permanent zoning regulations[4] (the "Ordinance," and together the "Zoning Enactments") that affected the opening of AOBs in Caroline County.

Pending is the Commissioners' Motion for summary judgment and Steiner's motions to strike particular exhibits accompanying the Commissioners' motion and for leave to file a surreply.  For the following reasons, the motion for summary judgment will be granted, and Steiner's motions will be denied.

I.   Background

Steiner sought to open an AOB on the property located at 23823 Shore Highway in Caroline County (the "Property").  Mem. Opp. Mot. for Summ. J. Ex. 1 ¶ 3 (Affidavit of Steiner).  The Property contains a restaurant building and an old vacant farmhouse and has housed various nightclubs and restaurants, *see id*. Ex. 12a at 24 (Chronology of the Property); most recently it had been a sports bar.  The Zoning Enactments prohibited Steiner from opening an AOB on the Property.

In early 2004, Steiner became interested in the Property and in April 2004, Steiner learned, informally, that the following entities would not object to the operation of an AOB at the Property: (1) the Caroline County Department of Planning & Codes Administration (the "Dept. of Planning"); (2) the County

---

[4] Caroline County Ordinance No. 2005-002.

2

Sheriff's office; and (3) the Caroline County Liquor Board. Steiner Aff. ¶¶ 4-6.

On March 3, 2005, following a telephone inquiry from Steiner regarding the AOB, Elizabeth A. Krempasky, the Director of the Dept. of Planning, emailed Charles D. MacLeod, of the law firm Funk and Bolton, who serves as the County Attorney, and mentioned the creation of the Moratorium.  Mem. Opp. Mot. for Summ. J. Ex. 6 at 1.

On March 8, 2005, Steiner, not knowing about the impending Moratorium, entered into a contract to purchase the Property. *Id.* ¶ 7.  On March 9, Steiner obtained an occupancy permit application and learned that he needed a special use exception from the County Board of Zoning Appeals.  *Id.* ¶ 8.  That day, Steiner obtained an Application for Special Use Exception (the "Special Use Application"), submitted a site plan (the "Site Plan") to the State Highway Administration's Denton, Maryland office, and obtained an Application for Water Supply and/or Sewage Verification (the "Water Application").

On March 10, the day after Steiner picked up the Special Use Application, Krempasky sent another email to attorneys at Funk and Bolton noting Steiner's activities and urging the completion of the Moratorium.  Mem. Opp. Mot. for Summ. J. Ex. 6 at 3.

On March 15, Steiner completed the Water Application and returned it to the Caroline County Health Department.  After

William Deck, the Director of the Health Department Division of Environmental Health, received the Water Application, he had a conversation with Krempasky who implied that the County was in no hurry for Deck to approve Steiner's application.  Mem. Opp. Mot. for Summ. J. Ex. 10 at 56 (Deposition of William Deck).  Then, on April 4, Steiner received a letter from the County Environmental Health Department stating that the Water Application would be denied unless Steiner met certain restrictions.  Steiner asserts that he could satisfy the additional requirements for the Water Application.

On April 4, Steiner also received approval for the Site Plan and submitted the Special Use Application to the Dept. of Planning.  Accompanying the Special Use Application were Steiner's business plan, floor plan, plat, and non-refundable $400 fee.  *Id*. ¶ 10.  On April 8, Blomquist wrote Krempasky regarding Steiner's Special Use Application and discussed ways to delay its approval.  Mem. Opp. Mot. for Summ. J. Ex. 6 at 49.

On April 13, 2005, the Planning Commission and the Commissioners held hearings on the Moratorium.  These hearings, were held together in an effort to get the Moratorium in place as soon as possible to thwart Steiner.  Mem. Supp. Mot. for Summ. J. Ex. 4 at 143-44 (Deposition of Krempasky).

On April 15, Steiner received a letter from Krempasky requiring Steiner to submit additional information by April 27 so

4

that he could retain his May 17 hearing date for the Special Use Application.  That same day, Steiner called Krempasky, discovered she had already left and made an appointment to see her on April 18 at 3 p.m.  *Id*. ¶ 11.  On April 18, Steiner arrived at 2 p.m. and waited until 4 p.m. when he was informed that Krempasky could not meet with him that day but could meet with him on April 20. *Id*. ¶ 12.

At an April 19 meeting, the Commissioners passed the Moratorium.  At the April 20 meeting between Krempasky and Steiner, she informed Steiner that he needed to address three items by the next day to complete his Special Use Application. *Id*. ¶ 12.  On April 21, 2005, Steiner faxed the requested information to Krempasky.  That day, Steiner learned, from his realtor, that the Commissioners had passed the Moratorium.

Steiner immediately called Krempasky to ask about the Moratorium.  On April 25, Steiner received a letter from Krempasky stating that it was pointless to proceed with the Special Use Application because of the Moratorium.  On April 28, Steiner received a $400 refund for the application fee stating that the application had been withdrawn.

On September 23, 2005, after his relationship with the former owner of the Property became strained, Steiner released his interest in the Property.

II.  Analysis

A.    Summary Judgment

Steiner's second amended complaint alleges that the Moratorium and the Ordinance violate the Federal and the Maryland protections for free speech.  The Commissioners have moved for summary judgment arguing that: (1) the challenge to the Moratorium is moot; (2) the Moratorium and Ordinance are content-neutral regulations subject to intermediate scrutiny; (3) the Zoning Enactments were designed to serve a substantial government interest; (4) the provisions restricting sign placement and content in the Moratorium are constitutional; and (5) the Ordinance is not a prior restraint.  Steiner counters that: (1) the Court should not apply intermediate scrutiny; (2) neither ordinance survives intermediate scrutiny; and (3) the Moratorium challenge is not moot.

1.    Standard of Review

Under Rule 56(c), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must view the facts and reasonable inferences

drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The opposing party, however, must produce evidence upon which a reasonable fact finder could rely.  *Celotex*, 477 U.S. at 317.  The mere existence of a "scintilla" of evidence is insufficient to preclude summary judgment.  *Anderson*, 477 U.S. at 252.

2.  Discussion

In April 2005, the Commissioners passed the Moratorium, which restricted the available locations of AOBs to certain zones and established, *inter alia*, particular setback requirements and advertising restrictions.  Caroline County Ordinance No. 2005-001 § 7.  The stated reason for the Moratorium was to allow the Commissioners time to create permanent zoning amendments that were ultimately embodied in the Ordinance.  In September 2005, the Commissioners enacted the Ordinance, which allows AOBs to be operated in zones different than those allowed in the Moratorium, and establishes setback requirements for them.  On October 31, 2005, the Moratorium expired.

i.  Justiciability of the Moratorium claims

The Commissioners argue that the claims involving the Moratorium are moot because it is no longer effective and has been replaced by the Ordinance.  Steiner counters that he claims

damages stemming from the Moratorium because it prevented him from establishing a use prior to the Ordinance.

Mootness is an Article III limitation on the jurisdiction of the federal courts. *Brooks v. Vassar*, 462 F.3d 341, 348 (4th Cir. 2006).  Under Article III, federal jurisdiction requires an actual controversy at all stages of review.  *Id*.  However, "the mere amendment or repeal of a challenged ordinance does not automatically moot a challenge to that ordinance."  *Am. Legion Post 7 of Durham, N.C. v. City of Durham*, 239 F.3d 601, 605 (4th Cir. 2001).

Courts assessing whether a challenge to a repealed or amended statute is moot have focused on whether the government may re-enact the statute.  *E.g., id*. at 606.  Here, the Moratorium has been replaced by the Ordinance so the Moratorium itself will not be re-enacted.  Despite this, Steiner argues that his injury is continuing because he would have opened an AOB on the Property before the Ordinance came into existence were it not for the Moratorium.  As Steiner has alleged a continuing injury caused by the Moratorium, his challenge is not moot.

ii.  Restricting the location of AOBs

To determine the constitutionality of a zoning ordinance affecting the location of AOBs; a court should: (1) look at whether the regulation should be analyzed as a time, place, and manner regulation; (2) determine which level of scrutiny to apply

based on whether the regulation is content-based or content-neutral; and (3) apply the appropriate level of scrutiny.  *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 434 (2002).[5]
A court should separate the inquiry into whether an ordinance is content-neutral from the inquiry into whether it satisfies the appropriate level of scrutiny.  *Id.* at 440.

Caroline County's Zoning Enactments, like the ones in *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986), restrict AOBs to specific locations.  Accordingly, the Zoning Enactments are properly analyzed as a form of time, place, and manner regulation.  *Renton*, 475 U.S. at 46.

Distinguishing between content-based and content-neutral regulation is important because "regulations enacted for the purpose of restraining speech on the basis of its content presumptively violate the First Amendment."  *Renton*, 475 U.S. at 46-47.  In contrast, content-neutral "time, place, and manner regulations are acceptable so long as they are designed to serve

---

[5] In a footnote, Steiner has suggested that this case involves an "as applied" challenge to the ordinances: "although they might be constitutional if their facially-neutral stated purpose was actually what the attorneys drafting the ordinance recited, their true purpose was to prevent [Steiner's] message. Similarly, [Steiner's] challenge on the ground that the ordinances do not provide adequate alternative avenues is an 'as-applied' challenge."  Mem. Opp. Mot. for Summ. J. at 1 n.1.  As Steiner's challenge focuses directly on the intent of the Commissioners and the adequacy of alternative avenues, it falls directly within *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986).  Accordingly, Steiner's as applied arguments will be subjected to a *Renton* analysis.

a substantial governmental interest and do not unreasonably limit alternative avenues of communications." *Renton*, 475 U.S. at 47.

Here, it is not immediately clear whether the Zoning Enactments fall into the content-based or the content-neutral category because although the Zoning Enactments treat AOBs differently, the Commissioners argue that they were focused not on the content of the expression found in an AOB, but rather on the well-established secondary effects of such establishments on the surrounding community.

The *Renton* Court approved the district court's focus on the "predominate concerns" of the City Council in determining whether the ordinances at issue were content-based or content-neutral. *Renton*, 475 U.S. at 47-48.  Accordingly, to determine whether the Zoning Enactments impermissibly suppress free expression the Court must look for the Commissioners' "predominate" intent. *Renton*, 475 U.S. at 47-48.  This requires the Court to determine whether the predominate concerns motivating the Zoning Enactments were the secondary effects of AOBs or the content of the expression at AOBs.  *Alameda*, 535 U.S. at 441.

There is an inherent potential for error in determining legislative motive when assessing a regulation's constitutionality.  The Supreme Court "will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive . . . .  What motivates one legislator

10

to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork." *Renton*, 475 U.S. at 48 (*quoting U.S. v. O'Brien*, 391 U.S. 367, 383–84 (1968)).

In *Giovani Carandola, Ltd v. Bason*, 303 F.3d 507 (4th Cir. 2002), the Fourth Circuit, in assessing the constitutionality of state restrictions on nudity, analyzed predominate intent to determine whether to apply intermediate or strict scrutiny.  In *Carandola*, the Fourth Circuit concluded that the legislature's predominate intent was not to restrict speech.  *Id*. at 515.  In reaching its conclusion, however, the Court noted that although the government offered no evidence supporting its claim that it considered the secondary effects, *id*. at 514, the restrictions were part of a scheme of regulation that demonstrated such a concern, *id*. at 515.  Significantly, the *Carandola* Court also noted that the plaintiff offered no evidence of an unconstitutional motive.  *Id*. at 515.  Here, although there is evidence of an intent to fight the secondary effects, there is also evidence of another, though perhaps not an unconstitutional, motive.

The Moratorium was designed to allow the Commissioners time to consider amendments to the County's zoning regulations that would minimize the secondary effects of AOBs.  The Moratorium states that the Commissioners recognized the secondary effects

arising from the location and operation of AOBs.  Caroline County Ordinance No. 2005-001.  In addition, the Commissioners enacted the Moratorium to prevent AOBs from opening and frustrating the ultimate purpose of the zoning amendments before they could be carefully considered.  *Id.*

Similarly, the Ordinance was designed to avoid the harmful secondary effects associated with AOBs.  Caroline County Ordinance No. 2005-002.  The Ordinance lists 36 studies conducted by other cities that the Commissioners relied upon in creating the zoning amendments.  The Ordinance contains a Statement of Findings, Intent, and Purpose that affirms the Commissioners' concern with the secondary effects of AOBs.  *Id.* § 1(a)-(b).  Moreover, the Commissioners assert that regulation of AOBs was first on the "radar screen" of the Dept. of Planning in 2001.  Krempasky Dep. at 126-27.

The record also indicates that although there were general concerns in 2001, the Moratorium was created and passed in response to Steiner.  Krempasky Dep. at 130.  The Commissioners argue that even if Steiner's activity spurred them to action, that fact does not require the Court to find illicit or unconstitutional motives.  Mem. Supp. Mot. for Summ. J. at 33.  The cases cited by the Commissioners focus not on predominate intent, as the Court does here, but on the relationship between the restrictions and secondary effects to which they are directed

12

--a discussion appropriate when applying a particular level of scrutiny.  Although unconstitutional motives are not required to be imputed, the Commissioners' argument does not prohibit the Court from finding such a purpose.

Steiner offers evidence demonstrating: (1) the dilatory tactics designed to allow the Commissioners to pass the Moratorium before he obtained the necessary permits (which might have 'grandfathered' his use into continuing legality under either of the Zoning Enactments); and (2) the desire of the Commissioners and others in the County to restrict AOBs as much as possible. *See generally* Mem. Opp. Mot. for Summ. J. at 3-20 (arguing that the circumstances demonstrate that the County delayed Steiner, rushed the Moratorium, and desired to severely restrict the locations available for AOB operation).  Steiner employs this evidence to support his argument that the Commissioners' predominate intent was to restrict the content of the entertainment offered at AOBs rather than to address the harmful secondary effects of AOBs.

That (1) Steiner may have been intentionally delayed so that the Moratorium could be passed; and (2) the Commissioners and others wished to restrict AOBs severely, does not compel the conclusion that the Commissioners desired to regulate based on content.  Instead, it suggests the intent to ensure that the regulations passed and were as restrictive as the Constitution

allowed.  Whether the regulations have exceeded these limitations is a question discussed below in the Court's discussion regarding the application of the appropriate level of scrutiny.

No reasonable fact finder could find that the predominate concern of the Commissioners was to restrain the form of expression to be shown at AOBs on the basis of its content. Accordingly, the Zoning Enactments will be subjected to intermediate scrutiny and the Court will determine whether the Zoning Enactments are designed to serve a substantial governmental interest and whether they allow for reasonable alternative avenues of communication. *Renton*, 475 U.S. at 50.

The Court has already determined intent in selecting the appropriate level of scrutiny, but to assess the government's interest, the Court "asks only whether the government proffers evidence that the regulation serves a *current* governmental interest." *Carandola*, 303 F.3d at 515.  The governmental interest in addressing the secondary effects associated with AOBs is substantial.  *See Carandola*, 303 F.3d at 516 (noting that "bars and clubs that present nude or topless dancing" have "a long history of spawning deleterious effects").  Indeed, the Commissioners may rely on the evidentiary foundation established in *Renton* to conclude that nude dancing "is likely to produce the same secondary effects in [Caroline County] unless the plaintiff produces clear and convincing evidence to the contrary."

14

*Carandola*, 303 F.3d at 516.  Moreover, the Commissioners were entitled to rely on the experiences and findings of other cities. *Renton*, 475 U.S. at 51.  As Steiner has not offered evidence suggesting that an AOB would not have those effects in Caroline County, nothing in the record controverts the evidence upon which the Commissioners relied.  Accordingly, the Commissioners have a substantial interest in controlling the secondary effects of AOBs.

In assessing the method by which the Commissioners chose to further their substantial interests, the Court notes that "[i]t is not [the court's] function to appraise the wisdom of [the Commissioners'] decision" as to the exact methods of regulation. *Renton*, 475 U.S. at 52.  Indeed, the Commissioners could have chosen to disperse or concentrate AOBs.  *Id*.  Moreover, the Commissioners "must be allowed a reasonable opportunity to experiment with solutions to admittedly serious problems."  *Id*. Although the Commissioners may have been aggressive in their efforts, it is clear from the evidence that the Commissioners designed the Zoning Enactments to combat the secondary effects. Accordingly, no reasonable fact finder could find that the Zoning Enactments do not serve the substantial government interest in controlling the secondary effects of AOBs.

Finally, the Court must assess whether the Zoning Enactments allow for reasonable alternative avenues of communication.  The

Commissioners argue that: (1) sufficient land is available considering that only Steiner is seeking to open an AOB in Caroline County; and (2) Steiner's reasons for arguing that certain sites are inadequate are not convincing under the appropriate legal standard.  Steiner does not directly challenge the reasonableness of the overall quantity of land available; instead Steiner argues that an unreasonably small amount of land is left for AOBs once setbacks and other considerations are considered.

To assess the alternative avenues, the *Renton* Court considered the land that the ordinances at issue left available to AOBs.  *Renton*, 475 U.S. at 53-54.  The *Renton* Court did "not prescribe a set number or ratio of sites required, [it] merely state[d] that it must be 'reasonable.'"  *Bigg Wolf Disc. Video Movie Sales, Inc. v. Montgomery County, Md.*, 256 F.Supp.2d 385, 398 (D. Md. 2003).  Indeed, this Court "has held that the number of sites available must merely be greater than or equal to the number of adult entertainment businesses in existence at the time the new zoning regime takes effect."  *Id*.

That an operator must fend for himself "in the real estate market, on an equal footing with other prospective purchasers and lessees, does not give rise to a First Amendment violation."  *Renton*, 475 U.S. at 54.  Moreover, "although [the Supreme Court has] cautioned against the enactment of zoning regulations that

have the effect of suppressing, or greatly restricting access to, lawful speech, [it has] never suggested that the First Amendment compels the Government to ensure that adult theaters, or any other kinds of speech-related businesses for that matter, will be able to obtain sites at bargain prices." *Renton*, 475 U.S. at 54. The First Amendment "requires only that [the Commissioners] refrain from effectively denying [Steiner] a reasonable opportunity to open and operate [an AOB] within the [County]." *Renton*, 475 U.S. at 54. Accordingly, to demonstrate a genuine issue of material fact Steiner must present evidence demonstrating that the land is actually unavailable, not that the land available is simply economically undesirable.

Steiner argues that the only land available under the Ordinance is "off-road interior portions of large, undeveloped, undivided parcels of raw agricultural land without water or septic or any commercial infrastructure whatsoever." Mem. Opp. Mot. for Summ. J. at 46. Steiner argues that to use these parcels, an AOB operator would have to purchase or lease the large tract of land or sub-divide and develop it for the relatively small use that an AOB requires. *Id*. Steiner argues that this is not rational land use planning. As it is not the province of the Court to appraise the wisdom of the decision to locate AOBs in particular areas, *Renton*, 475 U.S. at 52, and Steiner's arguments focus on circumstances that make the property

economically undesirable, these arguments are unavailing.

Steiner also argues that the parcels available under the Ordinance may not have water or septic services and may not be capable of such services. Mem. Opp. Mot. for Summ. J. at 47-48. Evidence that the land available under the Ordinance cannot sustain such systems or that zoning regulations prohibit the installation of such systems, may demonstrate that the Ordinance does not leave reasonable alternative avenues of communication sufficient to survive summary judgment. Steiner, however, simply asserts that the Commissioners did not consider whether the available areas were capable of sustaining such systems. This argument alone, is insufficient to create a genuine issue of material fact.

The Commissioners also argue that the Moratorium provided reasonable alternative avenues of communication. Mem. Supp. Mot. for Summ. J. at 34-40. The record suggests, however, that when the setback requirement with respect to nearby residences is considered, much of the land is no longer available. *Id*. at 38, 40. The Commissioners argue that the setbacks should not apply to residences within the available zones because an AOB operator could purchase and remove these properties as part of the site acquisition process for the AOB. *Id*. Although this may prove costly, the Supreme Court, as discussed above, has rejected arguments offered by plaintiffs with similar economic

difficulties.  *Renton*, 475 U.S. at 53-54.

Disregarding his elimination of sites under the Moratorium[6] and the Ordinance for economic reasons, Steiner's expert has identified reasonable alternatives given that Steiner is the only AOB operator seeking to enter Caroline County.  *Bigg Wolf*, 256 F.Supp.2d at 398.  Accordingly, no reasonable fact finder could find that the Zoning Enactments fail to allow reasonable alternative avenues of communication.

iii. Restricting the advertising of AOBs

Although Steiner alleges that the Moratorium's restrictions[7] on AOB signs are unconstitutional, Second Am. Compl. ¶ 11, Steiner does not respond to the Commissioners' argument that the restrictions are constitutional.  The regulations affecting sign location and content restrict commercial speech.  *See Central Hudson Gas & Elec. Corp. v. Public Service Comm'n of N.Y.*, 447 U.S. 557, 562 (stating that commercial speech is "expression related solely to the economic interests of the speaker and its audience").  "The Constitution . . . accords a lesser protection to commercial speech than to other constitutionally guaranteed

---

[6] Even if the Moratorium completely prohibited AOBs, it may still have been a constitutional time, place and manner regulation given its temporary nature and the fact that the expression found at an AOB does not lose value by mere delay as does a protest timed to coincide with a particular event.

[7] Steiner's Second Amended Complaint contains no allegations regarding the restrictions on signs in the Ordinance.

expression." *Id*. at 562-63.

To regulate commercial speech that is "neither misleading nor related to unlawful activity[:]"[8] (1) the government "must assert a substantial interest to be achieved by restrictions[;]" and (2) "the regulatory technique must be in proportion to that interest." *Id*. at 563.  Compliance with the latter requirement is governed by two criteria: (1) "the restriction must directly advance the state interest involved; the regulation may not be sustained if it provides only ineffective or remote support for the government's purpose[;]" and (2) "if the governmental interest could be served as well by a more limited restriction on commercial speech, the excessive restrictions cannot survive." *Id*.

The Moratorium prohibited: (1) freestanding signs or signs unattached to an AOB building that advertised the location or any aspect of the AOB; and (2) attached signs that contain adult entertainment or material, nudity, partial nudity, sadomasochistic abuse or any object or device that is used primarily for stimulation of sexual organs.  Caroline County Ordinance No. 2005-001 § 7(e)-(f).

The general purpose of the Moratorium was to counteract the harmful secondary effects of AOBs.  *Id*.  Moreover, the

_____

[8] There is no argument suggesting that the AOB advertising is misleading or unlawful.

Commissioners assert that the restrictions on AOB signs were designed to protect property values.  The complete prohibition on freestanding signs, however, would include a sign that simply states the name of the establishment.  Prohibiting such a sign would have, at best, a remote influence on the County's interest in avoiding the secondary effects of AOBs.  The County's interest in minimizing the secondary effects and maintaining property values would likely be served just as well by a more limited restriction.

Steiner, however, does not have standing to challenge this restriction.  Standing requires that Steiner allege: "an (1) injury in fact (2) that is fairly traceable to the defendant's conduct and (3) that is likely to be redressed by a favorable decision." *Retail Industry Leaders Ass'n v. Fielder*, 475 F.3d 180, 186 n.1 (4th Cir. 2007) (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  Moreover the injury must "be 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (*citing Lujan*, 504 U.S. at 560).  Here, Steiner challenges a restriction on advertising AOBs that has expired, yet Steiner neither opened nor operated an AOB for which he *could* advertise let alone *did* advertise only to run afoul of the law.  Accordingly, summary judgment will be granted as to the Moratorium's restrictions on advertising via signs.

iv.  Prior Restraint

Steiner has alleged that the Moratorium and Ordinance each are impermissible prior restraints.  Second Am. Comp. ¶¶ 14, 24-25.  Although the Commissioners argue that the Ordinance is not a prior restraint, Steiner has omitted any response on this issue.

An ordinance functions as a prior restraint "when it prohibits adult establishments from operating anywhere within the [County] until permission in the form of a special exception has been granted."  *Steakhouse Inc., v. City of Raleigh, N.C.*, 166 F.3d 634, 638 (4th Cir. 1999).  However, this does not require that a special exception is needed for an ordinance to be a prior restraint, as the Fourth Circuit, in a similar case, viewed content-neutral time, place, and manner regulations as prior restraints if the regulations require "governmental permission" prior to engaging in protected speech.  *11126 Baltimore Blvd., Inc. v. Prince George's County, Md.*, 58 F.3d 988, 995 (4th Cir. 1995).

The Commissioners argue that the required submission of a site plan is not unique to AOBs and no special use exception is required under the Ordinance.  The generally applicable site plan provisions require the submission of, *inter alia*, the layout of the property and its structures.  Mem. Supp. Mot. for Summ. J. Ex. 20 (Caroline County Code Art. 14 § 175-60).  The Ordinance requires that an AOB site plan in particular must include additional information regarding, *inter alia*, the location of

22

managers, lines of sight, and certain lighting requirements. *Id*. Ex. 21 (Caroline County Ordinance No. 2005-5). As an AOB operator must obtain approval for a site plan, government permission is necessary and so the ordinances are properly analyzed as prior restraints.

To avoid being an unconstitutional prior restraint, an ordinance "must sufficiently cabin the decision-maker's discretion, provide for a prompt administrative determination, and provide for prompt judicial review." *Steakhouse*, 166 F.3d at 638. To ensure that a decision is rendered promptly, the Fourth Circuit requires that: "(1) any restraint prior to judicial review can be imposed only for a *specified brief period* during which the status quo must be maintained; (2) expeditious judicial review of that decision must be available; and (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court." *11126 Baltimore*, 58 F.3d 988, 996 (*citing Freedman v. Maryland*, 380 U.S. 51, 58-60 (1965)) (emphasis added).

The Commissioners argue that the Ordinance does not provide County officials with the discretion to deny an adult business application based upon the content of speech or expression. Moreover, the Caroline County Code provides that if an AOB operator's site plan complies with the provisions governing site plans, "the Zoning Administrator and County Planner *shall* both

approve and sign the site plan." *Id*. Ex. 23 (Caroline County Code Art. 14 § 175-63)(emphasis added).  That section also provides for an appeal to the Planning Commission for individuals dissatisfied with the approval or disapproval of a site plan. *Id*.  Finally, the County Code provides that individuals aggrieved by the Planning Commission may appeal to the Circuit Court of Caroline County.  *Id*. Ex. 24 (Caroline County Code Art. 14 § 175-109).

As "[a] prior restraint on speech that imposes no time limitations on the decision-making process plainly fails to satisfy the first requirement set forth in *Freedman*," *11126 Baltimore*, 58 F.3d at 997, this Court concludes that a reasonable jury could find that the Caroline County Code provides County Administrators too much discretion in determining whether to accept a site plan filed by an AOB.

Steiner, however, did not seek to open an AOB under the Moratorium or under the Ordinance.  As Steiner did not seek to pursue approval of his site plan under the Zoning Enactments, their decision-making process did not delay him.  Accordingly, Steiner has not alleged an injury sufficient to have standing to challenge the Zoning Enactments as prior restraints.

B.   Motion for leave to file a surreply

Under Local Rule 105.2.a, surreply memoranda are not permitted to be filed unless otherwise ordered by the Court. Steiner argues that the Commissioners introduced new arguments regarding the reasoning behind the creation of the Zoning Enactments in their Reply.  The argument to which Steiner wishes to respond is the Commissioners' discussion of the reasoning behind the locations chosen as appropriate for AOBs in the Ordinance.  Steiner already argued in his opposition that the Commissioners' decision to locate AOBs on parcels closer to population centers was evidence of their improper motive.  As a result, the Court will deny the motion for leave to file a surreply.

C.   Motion to Strike

Steiner has moved to strike Defendant's exhibits 3, 11, and 16 on the grounds that they are the Defendant's answers to Steiner's interrogatories and that they are not supported by facts on the record nor are they based on personal knowledge. Under Federal Rule of Civil Procedure 56, summary judgment may be based on answers to interrogatories which may be permitted to supplement or oppose affidavits considered by the Court.  Fed. R. Civ. P. 56(c), (e).  Moreover, as the Court has not relied on these exhibits in assessing the motion for summary judgment, the Court will deny Steiner's motion to strike these exhibits as moot.

Steiner also challenges exhibits 13 and 18 as unsworn materials that fail to meet the requirements of Federal Rule of Civil Procedure 56(c).  These exhibits are Krempasky's responses to the expert reports of Steiner that discuss the land available under the Moratorium and under the Ordinance.  As the Court has not relied on these exhibits in assessing the motion to dismiss, the Court will deny Steiner's motion to strike as moot.

III. Conclusion

For the reasons discussed above the Commissioners' motion for summary judgment will be granted and Steiner's motions for leave to file a surreply and to strike certain exhibits will each be denied.


May 31, 2007                          _____/s/_____
Date                                  William D. Quarles, Jr.
                                      United States District Judge